## ATTACHMENT B

### The Defendant

1. Defendant DAVID W. WILSON was a Lieutenant with the MSP until approximately March 2018. WILSON first joined the MSP in approximately 1986 as a Trooper, was promoted to the rank of Sergeant in approximately 2006 and Lieutenant by around 2008. In the year 2016, WILSON was assigned to Troop E, Charlton Barracks Station (E-2).

2. As a member of Troop E, and a Lieutenant who also served as an Officer in Charge ("OIC") for overtime shifts, WILSON regularly received Troop E memorandums, policies, and protocols that instructed Troop E personnel as to AIRE requirements, including the 4-hour AIRE shift duration requirements and paperwork reporting responsibilities.

### The Defendant's Fraud Scheme

3. Based on a review of records that the MSP has provided to federal investigators and interviews of both current and former members of the MSP and Troop E, the investigation has revealed the following:

4. In the year 2016, according to his W-2, WILSON earned approximately $230,123 in wages and salary as a Lieutenant with the MSP. In that same year, WILSON claimed to have worked a total of approximately 169 AIRE overtime shifts, totaling approximately 683 overtime hours (paid at rate of approximately $100 per hour) for a total amount of $68,300 in overtime pay income. Based on records and evidence now available to investigators, the investigation has revealed that out of 683 overtime hours in 2016, WILSON earned a total of approximately $12,450 in overtime pay for approximately 124.5 hours of AIRE shifts for hours that WILSON in fact did not work.

5. As further described below, on some occasions, WILSON did not work at all yet claimed, and earned compensation for, overtime pay. On other occasions, WILSON submitted a mixture of both legitimate and fraudulent traffic citations (referred to as "ghost tickets") in order to fraudulently obtain overtime pay for hours that he did not actually work.

### No-Show Days

6. For example, based on a review of records obtained from the MSP and the MA RMV, on the following dates, WILSON claimed to have worked a full 4 hour overtime shift, but based on radio data and other records, WILSON never actually conducted any traffic enforcement and did not report for his overtime shift. For each of these days, WILSON utilized a vacation day in order to be eligible to work overtime during his normal shift, but in reality, WILSON did not actually work the scheduled overtime shift he claimed to have completed. The chart below summarizes these no shows days including the traffic enforcement WILSON claimed to have conducted on AIRE Activity Cards:

| Date | Regular Shift | Overtime Shift | AIRE Activity Card |
|---|---|---|---|
| 06/25/2016 | 8.0 Vacation | B-AIRE (11:00 a.m. - 3:00 p.m.) | None submitted |
| 07/09/2016 | 8.0 Vacation | C-AIRE (3:30 p.m. - 7:30 p.m.) | 4 assists/other, 1 civil |
| 10/09/2016 | Regular Day Off | A-AIRE (7:30 a.m. – 11:30 a.m.) | 2 assists/other with notation "rain" |
| 12/03/2016 | Regular Day Off | A-AIRE (7:30 a.m. – 11:30 a.m.) | 3 assists/other, 5 civil |

7. For example, regarding June 25, 2016, according to radio data, WILSON's radio was turned off at approximately 7:49 p.m. on June 24, 2016, and was not turned on until June 25, 2016 at approximately 9:01 p.m. In other words, WILSON's radio and vehicle were off during his purported 11:00 a.m. to 3:00 p.m. B-AIRE shift on I-90 even though he claimed overtime pay for doing traffic enforcement during that time.

8. Furthermore, while WILSON claimed to have worked a 4-hour C-AIRE shift from 3:30 p.m. to 7:30 p.m. on July 9, 2016, WILSON's radio was inactive (and thus his vehicle was not turned on) from the early morning of July 5, 2016 at 5:31 a.m. until approximately 12:51 p.m. on July 10, 2016.  In addition to radio data, there are also no records of WILSON refueling his vehicle, running a CJIS query or writing any citations on July 9, 2016.

9. Similarly, while WILSON claimed to have worked a 4-hour A-AIRE shift from 7:30 a.m. to 11:30 a.m. on October 9, 2016, and indicated on his AIRE Activity Card he had conducted two "assists/other," radio data demonstrates that the radio for his cruiser remained off for the entire day and CJIS data indicates that WILSON did not conduct a single CJIS query.  In fact, the data from WILSON's radio indicates that his radio was not turned on until approximately 7:37 a.m. the next day – thus indicating that WILSON was not actually driving his cruiser conducting traffic enforcement on I-90 as he reported and for which he claimed and earned overtime pay.

10. Finally, while WILSON claimed to have a worked a 4-hour A-AIRE shift from 7:30 a.m. to 11:30 a.m. at December 3, 2016, radio data from WILSON's cruiser revealed that his radio was turned the before at approximately 3:33 p.m. and was not turned back on until the evening of December 3, 2016 at approximately 8:07 p.m., after the completion of WILSON's purported A-AIRE shift. In addition to radio data, on December 3, 2016, there were also no records of WILSON refueling his vehicle, running a CJIS query or writing any citations.

### D-AIRE Shifts with Fraudulent Citations

11. For each of the D-AIRE shifts described below, WILSON claimed to have worked a full 4-hour D-AIRE overtime shift between the hours of 7:00 p.m. and 11:30 p.m. and claimed to have conducted 8 traffic enforcement vehicle stops for which he wrote and issued citations to traffic violators.  In support of his request of overtime pay WILSON indicated on his MSP Paystation account that he worked 4.0 hours; submitted a "Massachusetts State Police Troop E AIRE Activity Card" on which he claimed to have issued a certain number of either criminal or civil citations (typically 8 citations); as well as a carbon copy of what that WILSON claimed to have issued the driver for a traffic infraction and then submitted to the MA RMV for processing and collection of any penalty.

12. The records from each of the shifts described below showed that while WILSON claimed to have issued a certain number of citations (typically 8 citations) during his D-AIRE shift, he in fact only issued about 4 of the 8 citations. Consistent with what one former member of MSP has told federal investigators, while 4 of the citations were related to actual traffic enforcement vehicle stops, the other 4 were what members of Troop E called "ghost tickets," *i.e.*, tickets that existed for the purpose of collecting MSP overtime pay, but did not exist as far as the RMV was concerned because the purported traffic stops were fictitious.  In particular the records revealed that while WILSON purportedly submitted a carbon copy of a traffic citation to a particular driver on I-90 (for example, John Doe for driving 54 mph in a 35 mph zone resulting in a fine of $140), a copy of these four "ghost" citations were never submitted to the MA RMV for processing and collection, and never appeared on John Doe's driving record.

13. Furthermore, the records also revealed that WILSON appeared to run CJIS checks on multiple license plates in rapid succession, resulting in traffic citations allegedly taking place at or around the same time. As described above, a CJIS check on either an in-state or out-of-state license plate enabled a MSP trooper to obtain personal identifying information (such as name, address, and license number) to manually complete a citation.

14. In the following paragraphs, I have summarized the evidence regarding several days on which WILSON was assigned to work a D-AIRE shift and submitted fraudulent citations for traffic enforcement vehicle stops that never actually took place.

August 3, 2016 – D-AIRE Shift

15. On August 3, 2016, WILSON worked a regular nighttime 8-hour shift starting at approximately 12:00 a.m. and then later that evening was assigned a D-AIRE shift from 7:00 p.m. to 11:00 p.m. at Post Location E-4 (Boston/Tunnels). Following the August 3, 2016 D-AIRE shift, WILSON submitted an AIRE Activity Card as required to the MSP and falsely claimed that he had written 8 tickets for 8 civil violations during his D-AIRE shift.

16. However, based on records from the MA RMV, while WILSON submitted copies of citations for overtime pay, out of the 8 of citations for civil traffic infraction that WILSON claimed to have enforced, 4 were never submitted to the MA RMV for the processing and collection of any fines or penalties.

17. Furthermore, according to CJIS records, WILSON conducted a CJIS query of the individual drivers related to each of these four ghost citations within a short period of time, between 10:25 p.m. and 10:55 p.m.

| Citation No. | Date/Time on Citation | Date/Time of CJIS Inquiry | Record of Citation in MA RMV |
|---|---|---|---|
| R72247865 | 08/03/2016 – 10:25 PM | 08/02/2016 – 10:36 PM | No Record |

| | | | |
|---|---|---|---|
| R72247866 | 08/03/2016 - 10:35 PM | 08/02/2016 – 10:42 PM | No Record |
| R72247868 | 08/03/2016 – 10:55 PM | 08/02/2016 – 11:01 PM | No Record |
| R72247869 | 08/03/2016 – 10:55 PM | 08/02/2016 – 11:09 PM | No Record |

18. In addition, according to the data related to radio in WILSON's assigned MSP cruiser, WILSON's car radio was turned off and inactive from approximately 8:30 p.m. on August 3, 2016 (prior to the completion of WILSON's D-AIRE shift from 7:00 p.m. to 11:00 p.m.) and was not turned back on until early the next morning on August 4, 2016 at approximately 5:52 a.m.

August 22, 2016 – D-AIRE Shift

19. While August 22, 2016 was one of WILSON's regular day off (a Monday), WILSON was also assigned to a D-AIRE shift from 7:00 p.m. to 11:00 p.m. at Post Location E-4 (Boston/Tunnels). Following the August 22, 2016 D-AIRE shift, WILSON submitted an AIRE Activity Card and copies of citations to the MSP and falsely claimed that he had written 9 citations for 8 civil violations and 1 criminal violation during the D-AIRE shift.

20. However, based on MA RMV records, while WILSON submitted copies of citations to the MSP for overtime pay, out of the 8 of citations for civil traffic infraction that WILSON claimed to have enforced, 4 were never submitted to the MA RMV. Furthermore, as further describe below, WILSON ran 4 CJIS queries within a short period of time, between approximately 8:34 p.m. and 9:01 p.m.

| Citation No. | Date/Time on Citation | Date/Time of CJIS Inquiry | Record of Citation in MA RMV |
|---|---|---|---|
| R7176174 | 08/22/2016 – 8:35 PM | 08/22/2016 – 8:34 PM | No Record |
| R7176177 | 08/22/2016 - 8:50 PM | 08/22/2016 – 8:52 PM | No Record |
| R7176178 | 08/22/2016 - 8:55 PM | 08/22/2016 – 8:57 PM | No Record |
| R7176179 | 08/22/2016 – 9:00 PM | 08/22/2016 – 9:01 PM | No Record |

21. In addition to the above, while there were no MA RMV records for these driver's on August 22, 2016, there were citations for 3 of these same drivers on different dates. For

example, while there is no MA RMV record for citation no. R7176174 on August 22, 2016, there is a record for the same individual a week later, on August 29, 2016, for a citation for a motor vehicle accident.  Similarly, for citation no. R7176178, while there was no MA RMV record for this driver on August 22, 2016, there is a record for the same individual a year prior on September 23, 2015, for unregistered motor-vehicle.  Also, for citation no. R7176179, while there was no MA RMV record for this driver on August 22, 2016, there is a record for this same individual for a failure to obey on July 14, 2016.

September 13, 2016 – D-AIRE Shift

22. On September 13, 2016, WILSON worked 6 hours of a regular morning shift (starting around 7:00 a.m.) and took 2 hours of vacation leave, but was also assigned to a D-AIRE shift from 7:00 p.m. to 11:00 p.m. at Post Location E-4 (Boston/Tunnels).  Following the September 13, 2016 D-AIRE shift, WILSON submitted an AIRE Activity Card and copies of citations to the MSP falsely claiming that he had written 8 citations for 8 civil violations during the D-AIRE shift.

23. Based on MA RMV records, while WILSON submitted copies of citations to the MSP for overtime pay, out of the 8 of citations for civil traffic infraction that WILSON claimed to have enforced, 5 were never submitted to the MA RMV.

24. Furthermore, according to CJIS records, WILSON conducted a CJIS query of the individual drivers related to each of these citations *after* the actual alleged traffic infraction, in rapid succession.

| Citation No. | Date/Time on Citation | Date/Time of CJIS Inquiry | Record of Citation in MA RMV |
|---|---|---|---|
| R7437035 | 09/13/2016 – 9:20 PM | 09/14/2016 – 12:33 AM | No Record |
| R7437036 | 09/13/2016 – 9:20 PM | 09/14/2016 – 12:17 AM | No Record |
| R7437037 | 09/13/2016 – 9:45 PM | 09/14/2016 – 12:17 AM | No Record |
| R7437039 | 09/13/2016 - 9:55 PM | 09/14/2016 - 12:18 AM | No Record |
| R7437041 | 09/13/2016 – 10:10 PM | 09/14/2016 - 12:19 AM | No Record |

25. Furthermore, according to radio data, WILSON conducted the CJIS queries described above on September 14, 2016 while his cruiser was turned off and during his regular nighttime shift for September 15, 2016.

September 19, 2016 – D-AIRE Shift

26. On September 19, 2016, WILSON was assigned a D-AIRE shift from 7:00 p.m. to 11:00 p.m. at Post Location E-4 (Boston/Tunnels). Sometime following the September 19, 2016 D-AIRE shift, WILSON submitted an AIRE Activity Card and copies of citations to the MSP and falsely claimed that he had written 8 citations for 8 civil violations during his D-AIRE shift. WILSON also submitted a total of 12 citations from traffic enforcement vehicles stops he claimed to have conducted between approximately 8:55 p.m. and 10:05 p.m. on September 19, 2016.

27. However, based on MA RMV records, while WILSON submitted copies of citations to the MSP for overtime pay, out of the 14 of citations for civil traffic infractions that WILSON claimed to have enforced, 5 were never submitted to the MA RMV.

28. Furthermore, according to CJIS records, WILSON conducted a CJIS query of the individual driver's related to each of these citations in rapid succession, including two citations that took place at approximately the same time.

| Citation No. | Date/Time on Citation | Date/Time of CJIS Inquiry | Record of Citation in MA RMV |
|---|---|---|---|
| R7437065 | 09/19/2016 – 9:05 PM | 09/19/2016 – 9:21 PM | No Record |
| R7437068 | 09/19/2016 – 9:25 PM | 09/19/2016 – 9:25 PM | No Record |
| R7437069 | 09/19/2016 – 9:25 PM | 09/19/2016 – 9:29 PM | No Record |
| R7437071 | 09/19/2016 – 9:40 PM | 09/19/2016 – 9:48 PM | No Record[1] |

---

[1] While there was no MA RMV record for the driver in citation no. R7437071 on September 19, 2016, there was a citation issued to this same driver on September 6, 2016 relating to a motor vehicle accident.

| R7437074 | 09/19/2016 – 10:00 PM | 09/19/2016 – 10:03 PM | No Record |

29. Based upon a review of WILSON's 2016 (a) submission of fraudulent and bogus citations; (b) Paystation records; (c) MSP cruiser radio transmission records; (d) CJIS database transactions; (e) MSP cruiser refueling records; (f) AIRE records; and (g) RMV records, among other things, the investigation has revealed that WILSON left early or failed to show up for work for at least approximately 124.5 hours of AIRE overtime. Based upon WILSON's fraudulent misrepresentations to the MSP that he worked certain overtime hours for MSP (when, in fact, he had not worked those hours), MSP overpaid WILSON by approximately $12,450 in 2016 (at a rate of approximately $100 per hour).[2]

---

[2] Investigators used a conservative methodology in estimating loss. For example, if a Trooper worked a fraction of an overtime shift, the Trooper's work-time was credited upwards to the nearest quarter hour. If a Trooper's MSP cruiser radio data showed the possibility that a Trooper began an overtime shift earlier (or ended later) than the allotted time, the Trooper was given credit for that time, rounded up to the next quarter hour. If the Trooper's radio data showed any time worked in excess of a regular shift (even if it was remote in time to the AIRE overtime shift), the Trooper was credited with that time. Investigators also credited Troopers with commuting time, *i.e.*, if a Trooper needed a half hour of commuting time to reach his overtime assignment and/or return home from an overtime assignment, any commuting time was credited to the Trooper's overtime hours.